Anita **FIGUEROA,** Plaintiff/Appellant,

v.

**HESS OIL VIRGIN ISLANDS CORPORATION (HOVIC),** Defendant/Appellee.

No. D.C.CIV.APP.1999/001.

District Court, Virgin Islands, Appellate Division, D. St. Croix.

Considered: Dec. 7, 2000.

Filed: April 16, 2002.

Ronald E. Russell, Esq., St. Croix, U.S. Virgin Islands, for Appellant.

Lad Mingus, Esq., Law Office of R. Eric Moore, St. Croix, U.S. Virgin Islands, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge of the District Court of the Virgin Islands; THOMAS K. MOORE,* Judge of the District Court of the Virgin Islands; and RHYS S. HODGE, Judge of the Territorial Court of the Virgin Islands, Sitting by Designation.

## ORDER OF THE COURT

**AND NOW** this 16th day of April, 2002, having considered the arguments and submissions of the parties, and for the reasons set forth in the Court's accompanying opinion of even date, it is hereby

**ORDERED** that the appellant's motion to recuse District Judge Thomas K. Moore from this Panel is **DENIED**. It is further

**ORDERED AND ADJUDGED** that this matter is **REVERSED**, and **REMANDED** for a new trial consistent herewith.

## OPINION OF THE COURT

HODGE, Judge.

In this appeal, we are required to consider whether the employer of an independent contractor can be liable for injuries to

---

* On June 21, 2001, the appellant moved to recuse District Judge Thomas K. Moore from the Panel on the grounds that he has previously ruled as a matter of law in a Trial Division case in a manner that is contrary to her position here on appeal. According to the appellant, any trial judge who has already taken a position should not be "allowed to sit on the appellate panel that decides this issue" because his earlier decision "causes a conflict that prejudices the plaintiff's appeal before this panel." (Mot. for Recusal at 2.) Notably, the appellant cites no authority for this proposition, no doubt because it is wholly without merit. Although the judges of this Panel do not agree on the outcome of this appeal, we unhesitatingly agree that the motion to recuse must be denied.

the independent contractor's employee under section 414 of the Restatement (Second) of Torts ("Restatement"). At the close of the plaintiff's case, the Territorial Court granted the defendant's Rule 50 motion for judgment as a matter of law, holding that section 414 of the Restatement does not allow the employee of the independent contractor to maintain an action for damages against the employer of the independent contractor. The court also ruled that the plaintiff failed to present any evidence to establish the defendant-landowner's liability under section 343 of the Restatement. For the reasons set forth below, we will reverse.

## I. FACTS AND PROCEDURAL HISTORY

On October 24, 1996, Anita Figueroa ("Appellant"), a diner worker for United Ogden Services ("United Ogden"), fell near a salad bar at the Port–a–Kamp cafeteria on the premises of Hess Oil Virgin Islands Corporation ("HOVIC"). United Ogden is an independent contractor hired by HOVIC to provide cleaning and laundry services, and to maintain the Port–a–Kamp cafeteria. As United Ogden's employee, Figueroa was charged with restocking the salad bars in the cafeteria, preparing salads for the next shift, and generally maintaining the area around the salad bar. On October 24, 1996, while on a fifteen-minute break, Figueroa left the cafeteria's kitchen area and walked through the dining area to the soda machines. On the way back to the kitchen, she slipped on water that had accumulated on the floor where a hose running from the salad bar had slipped from its drain. She sustained injuries to her wrist, leg and back.

Figueroa brought this negligence action against HOVIC, asserting various theories of liability, including the tort of negligent exercise of retained control as set forth in Restatement section 414. At the close of Figueroa's evidence presented at trial, HOVIC moved for judgment as a matter of law on the ground that plaintiff had failed to establish a claim upon which relief can be granted. The trial judge granted HOVIC's motion and dismissed the action. This timely appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review.

■ This court has appellate jurisdiction to review judgments and orders of the Territorial Court in all civil cases. V.I. CODE ANN. tit. 4, § 33 (1997 & Supp. 2001); Revised Organic Act of 1954 § 23A.[1] We exercise plenary review over a trial court's judgment as a matter of law. *Carty v. Hess Oil Virgin Islands Corporation,* 42 V.I. 125, 78 F.Supp.2d 417 (D.V.I. 1999).

### B. Liability for the Negligent Exercise of Retained Control under Restatement § 414.

The appellant was employed by United Ogden, an independent contractor hired by HOVIC to operate and maintain the cafeteria, and to provide personnel for laundry and janitorial services. Pursuant to its contract, HOVIC provided all necessary equipment while United Ogden was responsible for preparing and serving all meals in the cafeteria and for cleaning and maintaining the dining and kitchen areas in accordance with HOVIC's standards.

1. 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts and U.S. Constitution at 73–177 (codified as amended) (1995 & Supp.2001) (preceding V.I. CODE ANN. tit. 1) ["Revised Organic Act"].

HOVIC repaired and modified the floor area of the cafeteria, installed white tiles on the floor and provided and installed the salad bars and draining mechanisms. At trial, Plaintiff relied upon the Restatement (Second) of Torts sections 343[2], 343A[3], 413[4], 414[5], and 416[6]. The trial court granted HOVIC's motion for judgment as a matter of law on the plaintiff's claims based on sections 413, 414 and 416, relying on *Monk v. V.I. Water & Power Authority*, 32 V.I. 425, 53 F.3d 1381 (3d Cir.1995) for the proposition that an independent contractor's employees may not sue the con-

tractor's employer under any provision of Chapter 15 of the Restatement (Second) of Torts.

### 1. *Monk v. Virgin Islands Water & Power Authority*

■ In *Monk*, the Court of Appeals for the Third Circuit considered "whether the word 'others,' in section 413 ... encompasses an independent contractor's employees." *Monk*, 53 F.3d at 1390. After extensive analysis, the court concluded that, under Virgin Islands law, "employees

---

**2.** Section 343 of the Restatement, *Dangerous Conditions Known to or Discoverable by Possessor*, provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if, but only if, he (a) knows or by exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it and (c) fails to exercise reasonable care to protect them against the danger. RESTATEMENT (SECOND) OF TORTS § 343 (1977).

**3.** Section 343A of the Restatement, *Known or Obvious Dangers*, provides:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. (2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated. RESTATEMENT (SECOND) OF TORTS·§ 343A (1977).

**4.** Section 413 of the Restatement, *Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor*, provides:

> One who employs an independent contractor to do work which the employer should

recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions. RESTATEMENT (SECOND) OF TORTS § 413 (1977).

**5.** Section 414 of the Restatement, *Negligence in Exercising Control Retained by Employer*, provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. RESTATEMENT(SECOND) OF TORTS § 414 (1977).

**6.** Section 416 of the Restatement, *Work Dangerous in Absence of Special Precautions*, provides:

> One who employs an independent contractor to do work which the employer should recognize is likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise. RESTATEMENT (SECOND) OF TORTS § 416 (1977).

of an independent contractor are not included within the protection of 'others' under the *peculiar risk* provisions of Chapter 15 of the Restatement." *Monk,* 53 F.3d at 1393 (emphasis added). Therefore, with respect to Plaintiff's peculiar risk claims, premised on sections 413 and 416 of the Restatement, the trial court correctly applied *Monk.* Figueroa contends, however, that the trial court erred in relying on *Monk* to dismiss her claim under section 414, negligent exercise of retained control, because that section is not a peculiar risk provision. We are thus faced with the question of whether the reasoning and analysis of *Monk* was properly applied by the trial court to bar the plaintiff's section 414 claim.

## 2. Chapter 15 of the Restatement (Second) of Torts, *Monk,* and Virgin Islands Law

Chapter 15 of the Restatement (Second) of Torts covers the liability of an employer of an independent contractor for injuries caused to others by the acts or omissions of the contractor. *See* Restatement div. 2, ch. 15, at 369. The first provision, section 409, recites the general rule of non-liability: "General Principle. Except as stated in sections 410–429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Restatement § 409.

Thus, sections 410 through 415 describe those situations in which an employer may nevertheless be liable for injuries to others caused by the contractor.[7]

Of these exceptions, the *Monk* court clearly limited its analysis to the meaning "of 'others' under the *peculiar risk provisions* of Chapter 15 of the Restatement." *Monk,* 53 F.3d at 1393 (emphasis added). As the court stated, its "holding extends to actions under the direct liability provisions of section 413, as well as the vicarious liability provisions of sections 416 and 427" dealing with the doctrine of peculiar risk. *Monk,* 53 F.3d at 1394. Thus, it is clear that *Monk* did not extend to section 414 of the Restatement (Second) of Torts because that section is not a peculiar risk provision.

In a recent decision, *Gass v. Virgin Islands Tel. Corp.,* 149 F.Supp.2d 205 (D.Vi. 2001),[8] the trial division of this court held that the employee of an independent contractor may not sue his employer's employer under section 414 because *Monk* "*impliedly* eliminated the presence or absence of circumstances of peculiar risk as a factor to be considered". *Id.* at 220 (emphasis added). We are unpersuaded by this reasoning and find it to be an insufficient basis for rejecting what we find to be settled law in this jurisdiction—namely, that one who undertakes to perform an affirmative duty will be liable for his own negligence.[9]

---

**7.** The Dissent makes much of the fact that chapter 15 applies only to injuries caused by the independent contractor, explaining that "it cannot be over-emphasized" that section 409 provides the general rule of nonliability, and is applicable where the contractor is negligent. This is correct; however, what is much more relevant in this case is that, section 414 applies where the injury "is caused" by the hirer's "failure" in other words, where the hirer caused the injury through his negligence. *See* Restatement § 414.

**8.** This case was brought to the attention of the court by Appellee pursuant to V.I. R.App. P. 22(i) which provides, in relevant part, that when significant authorities come to the attention of a party after argument, but before a decision, that supplemental citation may be offered for consideration by the court.

**9.** The Dissent argues that it is a "mischaracterization of section 414," to say that liability "does not depend on the conduct of the independent contractor." (Dissent at section I.) In reality, that section clearly provides for direct liability, that is, liability for one's own

*Monk's* holding was specifically limited to the peculiar risk provisions of Chapter 15 and was heavily influenced by California law. In particular, the California Supreme Court decision *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (1993), was heavily relied upon. That case held that an employee of a contractor may not sue the hirer of the contractor under either version of the peculiar risk doctrine, that is, under either section 413 or section 416. *Privette,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (1993); *see also Toland v. Sunland Housing Group, Inc.,* 18 Cal.4th 253, 264 n. 2, 74 Cal.Rptr.2d 878, 955 P.2d 504 (1998); *Camargo v. Tjaarda Dairy,* 25 Cal.4th 1235, 108 Cal.Rptr.2d 617, 25 P.3d 1096 (2001) (applying the peculiar risk analysis of *Privette* to section 410, negligent hiring, and holding hirer not liable for the negligent performance of a hired contractor for injuries to the contractor's employees). When considering a hirer's liability under the peculiar risk provisions, the courts consistently distinguished the issue before them from the tort theory set forth in section 414. *Toland,* 74 Cal. Rptr.2d 878, 955 P.2d at 511 n. 2 (holding that the "grant of review did not extend to and therefore we do not decide ... whether *Privette* ... would preclude an employ-

ee of an independent contractor from seeking tort recovery from workplace injuries under the theory of section 414"); *Camargo,* 25 Cal.4th at 1245, n. 2, 108 Cal.Rptr.2d 617, 25 P.3d 1096 (concluding that the consideration of section 410 should "not be read as having prejudged" application to section 414). As the California Supreme Court explained, *Privette's* conclusion simply does not extend to section 414.[10] *Hooker v. Dept. of Trans.,* 27 Cal.4th 198, 115 Cal.Rptr.2d 853, 38 P.3d 1081 (2002).

Hence, there is simply no basis in law, to hold that one who hires an independent contractor cannot be held liable for his *own* negligence outside of the 'peculiar risk' arena. To the contrary, common law principles of negligence allow injured parties to recover against anyone who fails to carry out their affirmative duties with due care. This court declines to follow *Gass,* and to undertake such a sweeping change in the tort law of this jurisdiction, especially in light of the local law, which allows an injured employee to sue any person reasonably responsible for his injuries.[11] Accordingly, as to its analysis and reasoning relating to section 414, *Gass* is rejected.

While there may be some temptation to follow *Gass,* and extend *Monk* to all of the provisions of Chapter 15, there are valid

---

negligence. This conclusion is compelled by the language of section 414 itself, which incorporates all of the elements of negligence into its terms. Section 414 requires that the employer "owes a duty," and that it was his "failure to exercise" "reasonable care" that "caused" the "harm." This language exactly mirrors the elements of common law negligence and when they are proven, the tortfeasor will be liable.

**10.** In *Hooker v. Dept. of Transp.,* 27 Cal.4th 198, 115 Cal.Rptr.2d 853, 38 P.3d 1081 (2002), the Supreme Court of California considered whether an employee of a contractor could sue the hirer of a contractor for the tort of negligent exercise of retained control as set forth in section 414. The court held that a

hirer may be liable to an employee of a contractor under section 414 where the hirer retained control and exercised that control in a manner that affirmatively contributed to the injury. "Imposing tort liability on a hirer of an independent contractor ... is consistent with the rationale of [California] decisions in *Privette, Toland,* and *Camargo* because the liability of the hirer in such a case is *not* 'in essence' 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor." *Id.* at 205, 115 Cal. Rptr.2d 853, 38 P.3d 1081 (emphasis in original).

**11.** *See* 24 V.I.C. §§ 263, 263a and 284(b).

reasons for not extending *Monk's* holding beyond those cases involving a peculiar risk. In discussing Chapter 15 of Restatement, the *Monk* court could have provided that an employee of an independent contractor could never sue an employer of the independent contractor thereunder. The *Monk* court did not; rather, it carefully framed its entire discussion around the 'peculiar risk' provisions.[12] In addition, the 'four fundamental reasons' cited by the *Monk* court all relate to, or refer to, the doctrine of peculiar risk.[13]

Thus, in *Carty v. Hess Oil Virgin Islands Corporation*, 42 V.I. 125, 78 F.Supp.2d 417 (D.V.I.1999), this court held that section 414 imposes a duty on the employer where the claim involves an employee of an independent contractor. *Id.* at 420. In so ruling, the court confirmed that *Monk* does not apply to section 414, but is limited to the *peculiar risk* provisions of Chapter 15.[14] Significantly, that holding is consistent with our holding today.

The doctrine of peculiar risk is premised on the broader rule of vicarious liability. The doctrine was meant to ensure that, when a landowner hired an independent contractor to do dangerous work, people who were injured would not have to depend on the contractor's solvency in order to receive compensation. *See Hooker*, 27 Cal.4th at 204, 115 Cal.Rptr.2d 853, 38 P.3d 1081; *see also Privette*, 21 Cal. Rptr.2d 72, 854 P.2d at 724–25. Today, those injuries would be the subject of worker's compensation law whenever the injured person is an employee of the tortfeasor, so one could conclude that the solvency issue has been resolved in those cases.

It is in this sense that the peculiar risk provisions provide for derivative liability for a hirer of an independent contractor—that is, liability for another's negligence. This is true even with respect to section 413, which *appears* to provide for direct liability.[15] Courts have explained that the

12. Tort law has always treated injuries involving ultrahazardous activities and those involving peculiar risks of harm, differently from other torts. *See Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868) (giving rise to modern strict liability for abnormally dangerous activities); RESTATEMENT (SECOND) OF TORTS § 520.

13. The court stated "[a] second and related (to the first) reason why courts have barred employees from recovering against their employer's employer is that such liability *is not necessary to achieve the original aims of the doctrine of peculiar risk ... " Monk*, 53 F.3d at 1392 (emphasis added). For its third reason or justification, the court stated, "the economic system permits workers who presume to undertake *dangerous work* to bargain for an enhanced reward for assuming the *danger." Id.* at 1393 (emphasis added). Finally, the court observed that "Courts point out that employers need not be held liable to employees of an independent contractor *under the peculiar risk provisions* of Chapter 15 of the Restatement because other remedies exist besides worker's compensation." *Id.* Also, es-

sentially all of the cases relied on by the *Monk* Court dealt only with the peculiar risk provisions of sections 413, 416 and 427. *See Privette v. Superior Court*, 5 Cal.4th 689, 21 Cal. Rptr.2d 72, 854 P.2d 721 (1993) (*en banc*) and cases cited in note 37.

14. That *Monk* is limited to the peculiar risk provisions is also evident from the decision itself. The court began by observing that sections 413, 416 and 427 adopt the 'peculiar risk doctrine.' The court then noted that the American Law Institute only "incorporated this doctrine in ... certain provisions of Chapter 15." *Monk*, 53 F.3d at 1390. That is to say, not all of Chapter 15 pertains to the peculiar risk doctrine.

15. The court in *Gass*, and HOVIC in this case, makes much of the *Monk* court's statement that this holding extends to actions under the direct liability provision of section 413, as well as the vicarious liability provisions of sections 416 and 427. *Monk*, 53 F.3d at 1393. The court stated that the same reasoning applied in both instances and cited *Pri-*

conclusion that peculiar risk is rooted in vicarious liability "is unaffected by the characterization of the doctrine as 'direct' liability." *Toland,* 74 Cal.Rptr.2d 878, 955 P.2d at 510 (internal quotations and citations omitted). Therefore, although *Monk* purports to consider direct liability, it really only precludes liability based on the peculiar risk doctrine set forth in section 413 and 416.[16]

Peculiar risk analysis is conceptually distinct from traditional negligence analysis: while negligence and section 414 involve a failure to act with reasonable care, peculiar risk liability functions more as a strict liability principle resulting from a variety of policy considerations. Peculiar risk doctrine provides for liability even when a defendant is not personally negligent and does not cause an injury. Rather, the defendant's liability is derivative or vicarious of the acts of another, and is not related to any duty of his own. Thus, the doctrine allows courts to impose liability on landowners *even when* they utilized independent contractors to perform dangerous work and denied that one could limit their own liability by shifting the duty of care to another. In this way, the peculiar risk doctrine has helped to ensure that persons who were injured by dangerous actives have recourse, in the event that the

independent contractor is insolvent. *See Monk,* 53 F.3d at 1390. Thus, in a sense, the courts have determined that landowners should be liable, even if the person who was actually negligent was *beyond their control, i.e.* an independent contractor; and, this is why the peculiar risk provisions, set forth in the Restatement, are utterly distinguishable from section 414.

In contrast, the section relied upon by Appellant does not depend on the conduct of the independent contractor. Section 414 provides for liability for an employer's own negligence where he retains sufficient control over the operative details of the work. Therefore, *Monk's* prohibition does not apply to section 414 cases, and the considerations underlying *Monk* do not affect liability arising under that section because such negligence is based on the hirer's own failure to exercise reasonable care in his retained control duty that forms the basis of liability. Thus, when considering section 414, a court need not consider whether it is better policy to charge the hirer with another's negligence, holding him responsible for the contractor's failures, because, in the case of section 414 liability, the hirer is actually negligent. *Hooker,* 27 Cal.4th at 211–13, 115 Cal. Rptr.2d 853, 38 P.3d 1081 (liability is not

*vette* for that proposition. In *Toland v. Sunland Housing Group, Inc.,* 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504 (1998), the California Supreme Court explained that, although peculiar risk liability under section 413 is deemed 'direct,' it is "in essence 'vicarious' or 'derivative' in the sense that it derives from the act or omission of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work." *Toland,* 955 P.2d at 512. The California Supreme Court has clearly stated that such conclusion does not apply to actions under section 414. In fact, "the rationale of *Privette* and *Toland* would bar forms of direct liability that are not derivative of the independent contractor's negligence but instead is based on the hirer's

own affirmative conduct." *Villafana v. Camco Pacific Construction Co.,* 91 Cal.App.4th 189, 110 Cal. Rptr.2d 170 (2001). "To the contrary, the liability of the hirer in such [a retained control] case is *direct* in a much stronger sense of that term." *Hooker,* 27 Cal.4th at 212, 115 Cal.Rptr.2d 853, 38 P.3d 1081.

16. The *Monk* court indicated that the employee would have other remedies, such as liability based on latent defects on the land. *Monk,* 53 F.3d at 1393. This clearly anticipates, and provides for, situations where an employer would be liable to his subcontractor's employees in other than peculiar risk situations.

derivative where hirer contributes to injuries, liability is warranted).

Simply stated, the direct liability of section 414 does not result from the same sort of policy considerations underlying peculiar risk liability, *i.e.* ensuring that those injured by dangerous activities had recourse. Because the peculiar risk provisions are "in essence vicarious," *Toland*, 74 Cal.Rptr.2d 878, 955 P.2d at 511, in that, they are rooted in and reflect, historical considerations, *Monk* does not bar forms of direct liability that are not premised on those same considerations and, which, by definition, are not derivative of the independent contractor's negligence. *Villafana*, 110 Cal.Rptr.2d 170 (2001).

▪ Significantly, when taken together with workmen's compensation law, the application of the peculiar risk doctrine "produces the anomalous result that a nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury." *Privette*, 21 Cal.Rptr.2d 72, 854 P.2d at 728. It was largely in response to this perceived inequity that the courts have attempted to extend workmen's compensation immunity to the employer's employer; noting, that it was the employer's employer who was probably paying for the workmen's compensation insurance. Even the Special Note, cited by the *Monk* court,[17] rests squarely on the conclusion that workers' compensation laws, which protect the independent contractor from suit by his employees, should likewise protect the independent contractor's employer since that party is indirectly bearing the cost of the insurance premiums. *Monk*, at 1390–1391.

While intuitively this reasoning is persuasive, it cannot be reconciled with current Virgin Islands law. Unlike many jurisdictions, where these "equity" considerations may be controlling, the statutory law and public policy of this jurisdiction compel a different result.[18] Therefore, we cannot ignore the mandate of the Legislature and apply the "equity" considerations set forth in *Monk*, which are the only justifications for extending this sort of immunity beyond the peculiar risk provisions to which they are more directly applicable.

The Legislature of the Virgin Islands has rejected this very 'equity' argument. The Legislature has expressly and extensively considered whether an employer's employer could be liable to a subcontractor's employees and have said yes. This is true notwithstanding the fact that the primary employer is in a sense immune from suit because of workers' compensation policy.

At one time, courts in this jurisdiction held that the exclusivity of the workers' compensation remedy also prohibited suit against a secondary employer. *See Vanterpool v. Hess Oil Virgin Islands Corp.*, 766 F.2d 117 (3d Cir.1985), *cert. den.* 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986). The Legislature of the Virgin Islands, which already allowed an injured

---

17. However, recognizing "a lack of uniformity on the issue, particularly because of the effect of the various state workers' compensation acts" that note was never adopted. *See Monk*, 53 F.3d at 1391 (*citing* 39 A.L.I. Proc. 244–49 (1962)). While Special Notes may provide interpretative information, only those portions of the Restatements *approved* by the American Law Institute provide the rule of decision in cases and only absent local law to the contrary.

18. Although the *Gass* Court noted that to allow the employee to recover under section 414 would produce the same inequitable result, it too fails to consider that, in the Virgin Islands, that "result" has been expressly approved by the Legislature. *Compare Gass*, 149 F.Supp.2d at 219 *with Nieves v. Hess*, 819 F.2d at 1237 (quoting Bill No. 498, 16th Legislature (1986) (attached explanation)).

worker to sue any third person, other than his employer, responsible for his injuries (24 V.I.C. § 263), reacted promptly to the District Court's ruling in *Vanterpool,* adding a new section to Title 24 of the Virgin Islands Code providing:

> It shall not be a defense to any action brought by or on behalf of an employee, that the employee at the time of his injury or death, was the borrowed, loaned, or rented employee of another employer. Any oral or written agreement between an employer and an employee which makes the employee the borrowed, loaned or rented employee of another employer shall be null and void as being against the public policy of this Territory.

24 V.I.C § 263a. This section worked to abolish the borrowed servant doctrine in the Virgin Islands, and clarified that a secondary employer is not immune from suit simply because the primary employer is protected under workmen's compensation.

To further bolster its position, the Legislature subsequently amended the exclusive remedy provision of the workers' compensation statute adding a new subsection that provides on its face for the relationship between a subcontractor's employees and the subcontractor's hirer:

> For purposes of this section, *a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to comply* with the provisions of this chapter with respect to being an insured employer. The "statutory employer and borrowed servant" doctrine are not recognized in this juris-diction, and an injured *employee may sue any person responsible* for his injuries other than the employer named in a certificate of insurance issued under section 272 of this title.

24 V.I.C. § 284(b) (emphasis added). Under this new subdivision (b) of section 284, it is clear that an employee of a subcontractor can sue the subcontractor's employer unless the subcontractor is not, itself, insured. The amendment is not limited to those cases involving borrowed employees; rather, it clearly addresses "contractors" and "subcontractor's employees" and denies the hirer of an independent contractor immunity from suit where the subcontractor is insured for workmen's compensation.[19]

If there were any doubt as to the purpose of the amendment, the Official Note attached to the bill removed such doubt entirely. The explanation attached to the bill provided in relevant part that:

> This bill is needed to assist person [*sic*] who are injured while on the job .... This need arises because the courts have been interpreting Section 284 of Title 24 of the Workmen's Compensation Act to grant immunity not only to a worker's immediate employer, but also to secondary employers although the Legislature never intended immunity for these *secondary wrongdoers.*
>
> .    .    .    .    .
>
> Take a situation where a [contractor's] employee is injured at Hess. Under the present law, the Courts say our Legislature intended not only to grant immuni-

---

**19.** While Figueroa does not claim that she was a borrowed or loaned employee, this statutory amendment is highly relevant where, as here, the parties discuss workers' compensation law in support of their interpretation of the Restatement. Specifically, where some Courts have noted that it may be inequitable not to immunize the employer of an independent contractor, this Court is compelled to respond, noting that in this jurisdiction, even where another company indirectly bears the costs of workers' compensation insurance, they are not immunized from suit as a result.

ty to the injured worker's employer [ ], but also to Hess. The Bill would avoid that.... [I]f the [contractor's] employee is badly hurt as a result of the negligence of Hess, and the employee has collected ... workmen's compensation benefits, [ ] *he can sue Hess.*

Bill No. 498, 16th Legislature (1986) (attached explanation) (emphasis added). This is a clear statement of the public policy of the Virgin Islands. It permits an injured employee to sue the hirer of his employer without any limitation or defense even where the employee was merely an indirect employee of his employer's hirer, and *even though* the hirer may ultimately bear the costs of his workers' compensation insurance premium.[20]

Only the employer actually named in the workers' compensation certificate is protected from suit and the "injured employee may sue *any other person responsible* for his injuries." 24 V.I.C. § 284(b) (emphasis added). There is nothing to indicate that the words "sue any other person responsible" in section 284(b) exclude employers of independent contractors. To the contrary, the limitation to those "named in the certificate" is a clear statement that there is no such limitation with respect to those not listed, *i.e.* employers of independent contractors, statutory employers, borrowed employers, or employers of a rented employee of another employer. *See* 24 V.I.C.

§§ 263a & 284(b). These legislative enactments comprise local laws, which preclude reliance on the Restatement's unadopted special note or other interpretations to the contrary. 1 V.I.C. § 4. Interestingly, this is precisely the sort of conflict with local workers' compensation law anticipated by the American Law Institute when it rejected the Special Note to the tentative draft of the Restatement.

Thus, an injured employee of an independent contractor may sue the employer of the independent contractor under the provisions of section 414, if that employer is not named in the worker's compensation certificate, and that person's negligent conduct caused the employee's injuries. 24 V.I.C. §§ 263 & 284(b). We must therefore conclude that an injured employee may sue anyone other than his employer whose conduct caused his injuries.[21]

Accordingly, Appellant may sue HOVIC under section 414 for HOVIC's liability for its own negligence in performing any of the duties retained by HOVIC.[22] *See Carty,* 78 F.Supp.2d at 420, n. 9. Because *Monk* did not address section 414, it is not dispositive and does not bar Appellant's claim based thereon. Further, to the extent that the unadopted Special Note to the Restatement is interpreted in such a way as to render it inconsistent with the law of this jurisdiction, it does not control. Therefore, the trial court erred in its dis-

---

20. The amendment, as clarified by the relevant legislative history, instructs that the rationale set forth in the Special Note to the Restatement, or any other theory or defense, is inapplicable where its effect is to preclude an employee of an independent contractor from suing the hirer of that contractor. Section 414 may therefore be used by such an employee to impose liability on HOVIC, as the owner of the premises, for its negligence.

21. Like the Supreme Court of California, who addressed this issue *Hooker v. Dept. of Transp.,* 27 Cal.4th 198, 115 Cal.Rptr.2d 853,

38 P.3d 1081 (2002), decided after oral argument was heard in this case, we decline to extend the peculiar risk analysis to the direct liability tort of negligent exercise of retained control.

22. Interestingly, HOVIC may have also been required to insure the safety of the cafeteria, as a place of employment, where Appellant worked and where employees had their meals, pursuant to 24 V.I.C. § 35(c). Naturally, if it was so required, HOVIC must use care in performing those duties.

missal of the plaintiff's section 414 claim in reliance on *Monk*.

### 3. Retained Control.

■ The Restatement provides that one who retains control of any part of the work, is subject to liability for harm that is caused by his failure to exercise his control with reasonable care. Restatement (Second) of Torts § 414. Although the trial court rejected liability based on section 414 of the Restatement (Second) of Torts, it nevertheless made findings concerning HOVIC's level of retained control to determine if such control subjected HOVIC to liability to the plaintiff. The court concluded that it did not, and in so doing, erred.

■ Control is not predicated upon the day-to-day activities of a general overseer. It involves a more intricate involvement in the work to be done and may be established by showing that the employer retained a degree of control over the manner in which the work is to be done.[23] In *Hood v. Hess Oil Virgin Islands Corp.*, 650 F.Supp. 678 (D.Vi.1986), the court applied that measure of control test where HOVIC retained control over safety aspects of the job. The court found that HOVIC should be responsible for any harmful consequences that result from its negligent exercise of that control. *Hood*, 650 F.Supp. at 680. The court also acknowledged that although "control is a factual issue to be resolved by the jury . . . [it] must grant summary judgment in favor of HOVIC . . . if [the plaintiff] fails to produce evidence creating a genuine issue for trial." *Id.* Therefore, where an employer

assumes affirmative duties, directs the method of performance of those duties, or offers specific instruction regarding the manner of performance, he may be liable when he exercises that control without due care. *See id.; see also Hooker v. Dept. of Trans.*, 27 Cal.4th 198, 115 Cal.Rptr.2d 853, 38 P.3d 1081 (2002); *Moloso v. Alaska*, 644 P.2d 205 (Alaska 1982).

To determine whether there was sufficient control to subject HOVIC to liability, both the contract and any affirmative exercise of control are relevant. Here, HOVIC retained more than a mere cursory level of control in the manner in which United Ogden conducted business. The evidence presented at trial showed that HOVIC expressly assumed affirmative duties with respect to safety in the workplace, and thereby retained sufficient control to be held liable when it failed to perform those duties with care. *See Hooker v. Dept. of Trans.; see also Moloso*, 644 P.2d 205 (Alaska 1982).

HOVIC provided and supplied the salad bars to be used by United Ogden. HOVIC repaired the floor and installed the defective drains and draining devices. HOVIC installed the white floor tiles that were indistinguishable from clear water. In other words, Plaintiff contends that HOVIC provided an unsafe work place, the cafeteria. Since United Ogden could only use the equipment and facilities provided by HOVIC, HOVIC thereby controlled the manner in which United Ogden carried out its obligations under the contract and, to the extent that it failed to do so with care, may have affirmatively contributed to the plaintiff's injuries.

---

**23.** "It is not enough that [an employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or prescribe alterations and devi-

ations . . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." RESTATEMENT (SECOND) OF TORTS § 414, cmt. c.

Additionally, HOVIC employed safety experts, conducted walk-throughs, and created a Safety and Health Policy that set forth a detailed description of HOVIC's affirmative duties. The policy expressly provided that HOVIC would monitor for compliance with the policy and "shall in *all aspects of operations* provide a safe and healthy working environment for its employees, contractors, and customers [.]" (J.A. Vol. II at 536 (emphasis added).) Clearly, this evidences supervisory "control" over the manner in which United Ogden did its work, being far in excess of what one would ordinarily exercise over an independent contractor. Therefore, pursuant to the Restatement, HOVIC must exercise those duties with care.

The issue of the degree of retained control is one of fact. Many factors may be relevant, and therefore the issue is best left to a jury. Where Appellant provided enough evidence to support the genuine issue of control over United Ogden by HOVIC, judgment as a matter of law is improper. Hence, this case will be remanded to the trial court for further determinations consistent with this holding.

### C. Restatement (Second) of Torts §§ 343 and 343A.

█ The trial court also rejected Figueroa's argument that HOVIC is subject to liability for her injuries in its capacity as a "possessor of land." In rejecting Figueroa's claim, the court indicated that Restatement sections 343 and 343A impose liability "if, but only if" a possessor of land has knowledge of, or has discovered, a dangerous condition. The court found that "there was no evidence ... indicating knowledge or discovery of the condition by the defendant." (J.A. Vol. I. at 20.)

█ Section 343 of the Restatement subjects a possessor of land to liability for known or discoverable dangers when he realizes, or should realize, that the danger presents an unreasonable risk of harm, and when he should expect that his invitees will not realize that danger, or that they will fail to protect themselves. Knowledge of a danger may be either actual or constructive, and the issue of whether a danger is 'known' is a question of fact. *Jackson v. Topa Equities*, 41 V.I. 338, 393, 1999 WL 641430 (D.V.I.1999). In this case, the trial court found that there was no evidence of actual knowledge on the part of HOVIC. However, because the trial court did not consider whether HOVIC had constructive knowledge of the dangerous condition, that is, whether it should have known, its section 343 analysis was incomplete.

█ Further, although it is sometimes a defense that the invitee also knew of the danger, that does not necessarily cut-off liability in this case. While one is not ordinarily liable for obvious dangers on his land, he remains liable where an invitee does not fully appreciate the threat and gravity of the danger or when the possessor can anticipate that the invitee will be harmed despite the obviousness of the danger. Restatement 343A. This is because invitees, such as a contractor's employees, have the right to be protected, even against 'known or obvious' dangers when harm should have been anticipated. *Jackson v. Topa Equities Ltd.*, 41 V.I. 338, 1999 WL 641430 (D.V.I.1999). Sections 343 and 343A clearly charge HOVIC with the responsibility of knowing of the potential risks to invitees on its land especially those created by its equipment.

In this case, Ms. Mackay, a safety expert, testified that HOVIC should have provided a safer set-up for the salad bar area. She indicated that the salad carts and hoses should have been secured. Of the three salad bars, only one had a hose that was firmly attached to the drain in the

floor. (J.A. Vol. I at 197.) This testimony was corroborated by Doreen Barnes, who indicated that the smaller salad bar had a sealed-in hose. (J.A. Vol. I at 197–198.)

Further, the testimony indicated that the salad bars moved with a mere bump to the cart. When bumped, the hose would come out of the six-inch drain and water would spill on the floor unnoticed. Significantly, the safety expert testified that the contrast of a clear liquid on the light colored or white floor tiles would make it difficult for a person to be aware when the floor is wet. (J.A. Vol. II at 368–373.)

Finally, HOVIC conducted safety walk-throughs and inspections of the premises. These inspections were performed by persons who should have been able to detect the danger of the conditions in the salad bar area. (J.A. Vol. II at 431.) The salad bars themselves were provided by HOVIC. Thus, the evidence was sufficient to suggest that the dangerous conditions were discovered by HOVIC, or that they would have been discovered through the exercise of ordinary diligence. A reasonable jury could have concluded that HOVIC knew of the need to firmly secure the hoses.

Therefore, although one might argue that United Ogden employees could also have known that the salad bar sometimes drained onto the floor, such knowledge does not necessarily cut off HOVIC's duty to use care to protect them. To the contrary, an invitee enters land upon the "implied representation" that the land is safe, and she may expect care in the inspection of the land. Restatement 343, comment b. Where repairs are required, an invitee may expect that those repairs be done properly. *Id.* This is particularly true where the possessor has expressly promised to provide a safe work environment. (J.A. Vol. II at 536.)

There was enough evidence from which a jury could find actual or constructive knowledge of the potential for the salad bar to leak and of the need to safely dispose of water from the melted ice. If so, it was up to HOVIC, as possessor, to cure that risk. Where it fails to do so, or where it does so in a manner insufficient to protect an invitee, it may be liable. Accordingly, the trial court improperly denied liability under sections 343 and 343A.

## III. CONCLUSION

▮▮▮ Where sufficient indicia of control are shown, the issues of control and due care in an action involving injury to an employee of an independent contractor, pursuant to Restatement (Second) of Torts § 414, are for the fact finder. At trial, the court should have allowed the issue of control by HOVIC over United Ogden, its employees, and the area of the Port–a–Kamp cafeteria to be submitted to the jury. Additionally, Anita Figueroa is not barred from suing HOVIC for her injuries under Restatement (Second) of Torts §§ 343 and 343A. Accordingly, the Territorial Court's Judgment as a Matter of Law in favor of HOVIC will be **Reversed**; and the case **Remanded** for proceedings consistent with this opinion.

MOORE, J., dissenting.

Because the employees of an independent contractor are not "others" who can avail themselves of the exception to employer non-liability set forth in section 414, and because I agree with the trial judge that the plaintiff presented no evidence to sustain her claim under sections 343 or 343A, I respectfully dissent.

## I. The Employer's Liability Under Section 414

From the Court of Appeals' decision in *Monk v. Virgin Islands Water & Power Authority,* 32 V.I. 425, 53 F.3d 1381 (3d Cir.1995), the trial judge below soundly

derived the proposition that an independent contractor's employees may not sue the contractor's employer under any provision of chapter 15 of the Restatement. The majority, on the other hand, reads *Monk* as not only limited to the peculiar risk provisions of chapter 15, but also as somehow incapable of this ineluctable extension. According to the majority, the reasoning of *Monk* cannot be extended to section 414 because that section cannot be characterized as one involving peculiar risk. And, the majority's analysis goes, limiting *Monk* to the peculiar risk provisions is predetermined by barriers both inherent in the concept of "peculiar risk" and the Virgin Islands Legislature's rejection of the "borrowed employee" doctrine as a defense to employer liability. Yet the majority never explains what it is about the nature of "peculiar risk" that serves under *Monk* to shield from liability the employer who deals in work presenting peculiar risks (sections 413, 416 and 427), while exposing to liability the employer who deals in only ordinary risks of harm to the contractor's employees (section 414). Further, the majority makes no attempt to reconcile with its decision how section 411, another provision of chapter 15 grounded on ordinary negligence and *not* peculiar risk, has been held by the California Supreme Court to prohibit a contractor's employee from suing the employer for ordinary negligence in selecting the contractor. The significance of this omission stems from the majority's heavy reliance on another decision of the California Supreme Court for its interpretation of section 414.

Finally, the majority's reliance on the Legislature's modification of the workers' compensation act by abrogating the borrowed employee doctrine in 1984 at 24 V.I.C. § 263a, and adding 284(b) in 1986 is utterly misplaced. The majority apparently would like to characterize HOVIC as Figueroa's "secondary employer" who is not immune from suit just because United Ogden, her "primary employer," is protected by workers' compensation. There is absolutely nothing in the record to even suggest that United Ogden loaned Figueroa to HOVIC to work in the Port–A–Kamp cafeteria or that she was otherwise HOVIC's direct employee. Figueroa was the employee of United Ogden, plain and simple. Her only relation to HOVIC is that she worked for United Ogden, whom HOVIC employed to do certain work. Even the majority recognizes that section 263a, by its very language, refers only to borrowed employees as defined therein. That section therefore cannot apply to Figueroa. The workers' compensation provisions do not create tort causes of action for injured employees and the amendments simply removed the "borrowing" or "secondary employer" from the exclusive remedy provisions of section 284. Since Figueroa is not HOVIC's borrowed employee and HOVIC is not Figueroa's "secondary employer," these provisions have nothing to do with the facts of this case. In any event, the majority's attempt to rely upon 24 V.I.C. §§ 263a and 284(b) to give Figueroa a cause of action against HOVIC under section 414 has already been foreclosed by *Monk* itself.

In my view, the very structure and purpose of chapter 15 presupposes that the employee of the independent contractor is never to be included in the class of persons referred to as "others" or "third persons" or "another" throughout the various sections. Because the majority gives short shrift to the overall structure of chapter 15, I begin by providing an overview of the general lack of liability of the employer of an independent contractor for the negligent acts of that contractor or its servants. It will then be clear that the majority's statements, that section 414 "does not depend on the conduct of the independent

contractor," that "[t]he doctrine of peculiar risk is premised on the broader rule of vicarious liability," and that "the peculiar risk provisions provide for derivative liability for a hirer of an independent contractor-that is, liability for another's negligence," are simply mischaracterizations of section 414, or indeed any, section of chapter 15, including its peculiar risk provisions. It will be just as clear that Figueroa has no claim to the exception to the general rule of non-liability embodied in section 414 in the context of *Monk* and Virgin Islands Law.

### A. Restatement Chapter 15—Statutory Construction

Chapter 15 of the Second Restatement of Torts sets forth the general rule of non-liability of the employer for the negligent acts and omissions of its independent contractor, and then compiles in several sections the circumstances in which the employer of an independent contractor can nevertheless be held liable for injuries *to others* caused by the negligence of the contractor and its employees. *See* RE-STATEMENT (SECOND) OF TORTS div. 2, ch. 15, at 369 [hereinafter "Restatement"]. The first provision, section 409, sets forth the general rule of non-liability of the employer for the negligence of its independent contractor:

> General Principle. Except as stated in §§ 410–429, the employer of an independent contractor is not liable for *physical harm caused to another by an act or omission of the contractor or his servants.*

Restatement § 409 (emphasis added).[1] It could not be more clearly stated that the negligence of the independent contractor or its servants is a precondition for the application of all and any of the exceptions to non-liability recited in sections 410 through 429. Thus, the majority's statement that section 414 is "utterly distinguishable from" the peculiar risk sections (*e.g.*, sections 413 & 416) in that section 414 "does not depend on the conduct of the independent contractor" is utterly without foundation and simply wrong. (Maj. op. at 640.)

Similarly, there is no basis in either logic or chapter 15 to define "others" one way for the peculiar risk provisions, *i.e.*, as excluding the independent contractor's employees, and another way for section 414, *i.e.*, as including the independent contractor's employees. The comment to section 409 makes no such distinction:

> In general, the exceptions may be said to fall into three very broad categories:
>
> 1. Negligence of the employer in selecting, instructing, or supervising the contractor.
>
> 2. Non-delegable duties of the employer, arising out of some relation toward the public or the particular plaintiff.
>
> 3. Work which is specially, peculiarly, or "inherently" dangerous.

Restatement § 409 cmt. b. The persons protected by the exceptions to the general rule do not vary from category to category; the "others" or "another" are the same whether the employer's negligence in hiring, instructing, or supervising the con-

---

1. The first comment defines "independent contractor" as "any person who does work for another under conditions which are not sufficient to make him a servant of the other." *See* Restatement § 409 cmt. a. Observe that this very first comment describes the quasi-employment relationship addressed by the

chapter, one to which the ordinary principles of *respondent superior* do not apply, but for which certain limited exceptions can nonetheless be invoked for imposing liability against the *independent contractor's employer.* This comparative reference to a true employment relationship continues throughout chapter 15.

tractor, non-delegable duties, or peculiarly or inherently dangerous work, are involved. The exceptions summarized in sections 410–429 are only differentiated by personal fault (direct liability) or lack of fault on the part of the employer (vicarious liability).[2]

By the common definition and meaning of words, the servant or employee of the contractor cannot be "another" injured "by an act or omission of the contractor or his servants." The servant herself cannot be the "other" she harms. Equally, the contractor cannot be the "other" harmed by itself or one of its servants, which means that a servant who is injured by a co-worker also cannot be "another" because the act of its servant is imputed to the contractor. *A fortiori*, the wording of the phrase "liable for physical harm caused to another by an act or omission of the contractor or his servants" in section 409 excludes the contractor and its servants from the coverage of chapter 15. Section 409 thus clearly refers to "another" as someone other than the servant/employee of the contractor. The very language of section 409's general principle of non-liability cabins the scope of chapter 15 to third-party "others" who are strangers to the contract and relationship between the employer and the independent contractor.

Because section 414 is an *exception* to section 409's general rule, it necessarily incorporates the unequivocal distinction between "another" and the contractor's servant as stated in section 409. Even without the analysis of the Court of Appeals for the Third Circuit in *Monk*, Figueroa has no cause of action against HOVIC as United Ogden's servant/employee under section 414 or any other exception to the general rule of non-liability

set forth in chapter 15. Figueroa of course retains whatever causes of action she might have against HOVIC based on HOVIC's own negligence as set forth in other provisions of the Restatement, such as sections 343 and 343A if she is an invitee on the property of the contractor's employer. This statutory construction is confirmed by the language permeating chapter 15.

The exceptions to the general rule of non-liability as stated in sections 410 through 429 of chapter 15 are divided into two topics. "Topic 1. Harm Caused by Fault of Employers of Independent Contractors" (direct liability) and "Topic 2. Harm Caused by Negligence of a Carefully Selected Independent Contractor" (vicarious liability). Topic 1, sections 410 through 415, covers those situations in which the employer's own fault, although not sufficient by itself for a cause of action against the employer, nevertheless contributes to and joins with the negligence of the contractor to cause harm to another. Again, any fault of the employer is *in addition to* the negligence of the contractor or the contractor's servants. The introductory note to topic 1 makes this clear.

> The rules stated in this Topic are principally important if, as is often the case (see § 409), the work entrusted to the contractor is such that *the employer is not answerable for the negligence of the contractor* which makes the work inadequate, or which consists of the improper manner in which the contractor and his servants perform the operative details of the work. In such a case, the employer's liability must be based upon his own personal negligence in failing to exercise reasonable care . . . to employ only contractors competent to do the

---

**2.** The sections are categorized under topic 1, "Harm Caused by Fault of Employers of Independent Contractors," or topic 2, "Harm

Caused by Negligence of a Carefully Selected Independent Contractor," discussed in text *infra*.

work with reasonable assurance of safety to others (see § 411); ... to exercise reasonable care to provide for the taking of such precautions, either by the contractor whom he employs or otherwise, as in advance are recognizable as necessary to enable the work to be safely done (see § 413); to exercise with reasonable care such control over the doing of the work as he retains to himself (see § 414).... If the employer fails to exercise care in any one of these particulars and thereby causes injury to others to whom he owes a duty of care, he is answerable because of his personal fault. Restatement, div. 2, ch. 15, topic 1, introductory note, at 371 (emphasis added).

Sections 416 through 429 make up topic 2 and address those situations in which the employer, regardless of its fault, is vicariously liable for the negligence of its carefully selected independent contractor.

The rules stated in the following §§ 416–429, unlike those stated in the preceding §§ 410–415, do not rest upon any personal negligence of the employer. They are rules of *vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault.* They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor. The liability imposed is closely analogous to that of a master for the negligence of his servant.

The statement commonly made in such cases is that the employer is under a duty which he is not free to delegate to the contractor. Such a "non-delegable duty" requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted. Such duties have been recognized in a series of exceptions to the "general rule" of non-liability stated in § 409, which are stated in the following Sections [416–429] in this Topic.

Restatement div. 2, ch. 15, topic 2, introductory note, at 394 (emphasis added). Even under these vicarious liability exceptions, it is always and necessarily the negligent act or omission of the contractor that triggers the potential liability of the employer.

"'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself." Restatement § 413 cmt. b. These "peculiar risk" provisions are found in *both* the direct liability sections of topic 1 and the vicarious liability sections of topic 2. It is only for those vicarious liability sections in topic 2 that peculiar risk in itself provides derivative liability. By chapter 15's definition of direct liability, the peculiar risk doctrine, in and of itself, simply does not provide "for derivative liability for a hirer of an independent contractor—that is, liability for another's negligence" under section 413, as the majority would have us believe (without citing any authority or reference to the Restatement). (Maj. op. at 639.) The very first comment to section 413 eliminates any possibility that a peculiar risk all by itself can be the basis for the employer's direct liability:

This Section states the rule as to the liability of the employer who fails to provide in the contract, or in some other manner, that the contractor shall take the required precautions. As to the liability of the employer who does so provide, see [vicarious liability] § 416 [in topic 2].

Restatement § 413 cmt. a. Since *Monk*'s ruling involved "peculiar risk" provisions from both topics, namely, the direct liability section 413 and the vicarious liability sections 416 and 427, they are reproduced in the margin.[3]

### B. Restatement Chapter 15, *Monk*, and Virgin Islands Law

In 1975, then-Chief Judge Almeric L. Christian held that the term "others" does not include the employees of the independent contractor in the situations involving "peculiar risk" and "special danger" covered by the vicarious liability provisions of sections 416 and 427 of topic 2 of chapter 15 of the Restatement. *See Munson v. Duval,* 11 V.I. 615, 630–33 (D.V.I.1975). In 1985, this ruling was expanded to include all the direct liability provisions of chapter 15. *See Gibson v. Sullivan Trail Coal Co.,* 21 V.I. 374, 377, 608 F.Supp. 390, 392 (D.Vi.) ("[T]he rule in this territory [is] that an employee of an independent contractor is not included in the class of persons protected in Chapter 15, Restatement of Torts, (Second)."), *aff'd,* 782 F.2d 1028 (3d Cir.1985). Of particular significance is

that the plaintiff in *Gibson* proceeded under a retained control theory under section 414, the same direct liability provision of chapter 15 that Figueroa raises here. *See id.* at 375, 608 F.Supp. at 391 (referring to the plaintiff's factual assertions with respect to "the degree of supervision and control retained by [the defendant employer] over the work in progress").

As noted by the Court of Appeals in *Monk,* later Virgin Islands courts "attempted to limit such holdings to situations in which the employers were sued under a vicarious liability theory." *Monk,* 53 F.3d at 1390 n. 24 (citing, *e.g., Henry v. Hess Oil V.I. Corp.,* Civ. No.1987–345, slip op. at 24 (D.V.I. St. Croix Div. Feb. 7, 1991)). The Court of Appeals observed that "while the Virgin Islands courts agree that employers cannot be held vicariously liable to employees of their independent contractor, they are divided on whether such employees can sue the employers for their direct negligence based on Chapter 15 of the Restatement." *Id.* The Court of Appeals resolved this division in our cases by hold-

---

**3.** Direct liability section 413 is titled: "Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor."

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
>
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Vicarious liability section 416 is titled: "Work Dangerous in Absence of Special Precautions."

> One who employs an independent contractor to do work which the employer

should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Vicarious liability section 427 is titled: "Negligence as to Danger Inherent in the Work."

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

ing expressly that there is no distinction between the direct liability exceptions to employer non-liability based on the employer's fault, *e.g.*, section 413, and those vicarious liability exceptions grounded only on the independent contractor's negligence, *e.g.*, sections 416 and 427.[4] There is nothing in *Monk*'s logic or language to restrict the rational of its holding to section 413 only. Contrary to the majority's suggestion here, there is no inference to be drawn from the fact that the *Monk* court did not give an advisory opinion "that an employee of an independent contractor could never sue an employer of the independent contractor thereunder." (*See* maj. op. at 639.) The Court did not do so because it only had before it the peculiar risk provisions of sections 413, 416 and 427.

In holding that the employer is not liable to its contractor's employees under section 413, the Court of Appeals joined courts in the majority of other jurisdictions that have held that an employer is not liable to its contractor's employees under the peculiar risk provisions of chapter 15, *i.e.*, sections 413, 416, and 427. *See Monk*, 53 F.3d at 1391–92 & nn. 28 & 30–31 (citing state and federal cases). The Court of Appeals held that employees of an independent contractor are not "others" protected by the peculiar risk provisions of

chapter 15, regardless of whether the provision at issue is one providing for direct liability or vicarious liability. *See id.* at 1393.

Just like the District Court Trial Division's 1985 *Gibson* decision, *Monk* is founded on the reasoning of an unadopted special note to chapter 15 of the tentative draft of the Second Restatement. *See Gibson*, 21 V.I. at 376–77, 608 F.Supp. at 392; *Monk*, 53 F.3d at 1390–91.[5] As observed by the special note, at the time of the drafting of the second Restatement, the employee of the independent contractor was not protected in the majority of jurisdictions by any of the exceptions stated in chapter 15.

> [I]t is still largely true that the [contractor's employer] has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. . . . [I]t has not been regarded as necessary to impose [third-party] liability upon one who hires the contrac-

---

**4.** Therefore, the post-*Monk* decisions of the Appellate and Trial Divisions of the District Court appearing to resurrect, without analysis or explanation, a distinction between the direct and vicarious liability provisions of chapter 15 cannot withstand analysis (even though I did not dissent in *Carty* and authored *Ibrahim.*). *See Carty v. Hess Oil V.I. Corp.*, 42 V.I. 125, 130 n. 9, 78 F.Supp.2d 417, 420 n. 9. (D.V.I.1999) ("While an employer of an independent contractor cannot be vicariously liable to an independent contractor's employees, direct liability for the employer's own negligence is not so barred."); *Ibrahim v. Virgin Islands Water & Power Auth.*, Civ. No.1992–227, 1996 U.S. Dist. LEXIS 22548, at *5–6,

*9–10, 1996 WL 493172 at *2, *3 (D.V.I. St. Thomas–St. John Div. June 28, 1996) (allowing an employee of an independent contractor to sue the contractor's employer under section 414 by implicitly relying upon the invalid distinction between direct and vicarious liability made in several pre-*Monk* decisions).

**5.** The court in *Monk* also found persuasive the reasoning of courts in the majority of jurisdictions that also relied on the unadopted special note to hold that the contractor's employees cannot sue the employer under the peculiar risk provisions of chapter 15. *See Monk*, 53 F.3d at 1391–94.

tor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him. Again, when the Sections in this Chapter speak of liability to "another" or "others," or to "third persons," it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included.

RESTATEMENT (SECOND) OF TORTS ch. 15, special note, at 17–18 (Tentative Draft No. 7, 1962) [hereinafter "Special Note"].[6]

Following the reasoning of this special note, as well as various elaborations by courts in other jurisdictions, the Court of Appeals in *Monk* concluded that it would be "inequitable" for the workers' compensation scheme to protect the independent contractor, but not the contractor's employer, from employee lawsuits under chapter 15, particularly when the employer is indirectly paying the cost of the workers' compensation premiums. *See Monk,* 53 F.3d at 1392; *see also, e.g., Privette v. Superior Ct.,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721, 728 (1993) (en banc) ("[T]he 'principal' who hires an independent contractor should be subject to no greater liability 'than its [independent contractor] agent,' whose exposure for injury to an employee is limited to providing workers' compensation insurance.") (citation omitted); *Toland v. Sunland Hous. Group, Inc.,* 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504 (1998) (expressly extending *Privette*'s reasoning to bar employee suits under section 413). As explained by *Monk,* the exclusive remedy of workers' compensation should equally protect the contractor's employer, who indirectly funds the cost of workers' insurance coverage through the contract price. *See Monk,* 53 F.3d at 1392. It bears noting that the Trial Division of this Court decided *Gibson* in *1985,* after the Legislature's abrogation in *1984* of the "borrowed employee doctrine." The Court of Appeals likewise did not find that this modification of the Virgin Islands workers' compensation scheme had any relevance to its determination of the meaning of "others" in chapter 15 when it decided *Monk* in *1995.*

Further following the reasoning of the special note, *Monk* pointed out that employees of independent contractors, as invitees of a landowner employer, can still sue for injuries caused by latent defects in the land or for "known or obvious" dangers whose harms the landowning employer should have anticipated, even if the employees are precluded from bringing suit under the provisions of chapter 15. *See id.* at 1393 (citing Restatement §§ 343, 343A; *Tauscher v. Puget Sound Power & Light Co.,* 96 Wash.2d 274, 635 P.2d 426, 430 (1981) (en banc); Special Note at 17–18). In this way, the Court of Appeals reaffirmed the earlier reliance by the Trial Division of this Court on the special note when it held in *Gibson* that "an employee of an independent contractor is not included in the class of persons protected in Chapter 15, Restatement of Torts, (Second)." *See Gibson,* 21 V.I. at 377, 608 F.Supp. at 392.

### C. Beyond *Monk*

I do not agree with the majority that *Monk*'s reasoning was or must be limited to the peculiar risk provisions of chapter 15. Both section 413 and section 414 (indeed, all of chapter 15's provisions) are premised on some personal fault of the

---

6. Although the special note was not ultimately included in the final draft of the Restatement, the majority of jurisdictions, including the Court of Appeals in this one, have adopted its reasoning in their interpretations of the provisions of chapter 15.

contractor and its employees. That section 413 involves a peculiar risk of harm while section 414 involves only an ordinary risk of harm does not change the fact that both sections involve work entrusted to the contractor for which "the employer [HOVIC] is not answerable for the negligence of the contractor [United Ogden] ... which consists of the improper manner in which the contractor and his servants perform the operative details of the work." *See* Restatement, div. 2, ch. 15, topic 1, introductory note, at 371. Similarly, there is no logical distinction between theories of liability that are both, in some sense, forms of derivative liability—the one based on the negligent employer who fails to provide special precautions for peculiarly risky work, *which the contractor performs in a negligent manner, see id.* § 413, and the other based on the employer who fails to exercise with reasonable care some retained control over the safety aspects of the work to be done, *which the contractor performs in an unsafe manner, see id.* § 414. Both theories precondition any liability of the employer on the negligence of the contractor or its servants.

In a recent Trial Division decision, I carefully examined the holding and analysis in *Monk* and concluded that the employee of an independent contractor is not an "other" under section 414 for the same reasons that *Monk* bars employee suits under the peculiar risk provisions. *See Gass v. Virgin Islands Tel. Corp.*, 149 F.Supp.2d 205, 219 (D.Vi.2001). In *Gass*, I reasoned that, by rejecting a categorical distinction between direct and vicarious liability, *Monk* set the stage for extending its reasoning and analysis to other direct liability provisions not involving peculiar risk. This is because no matter how much the majority would like to believe otherwise, the employer's liability under section 413 is premised on some fault of its own, irrespective of the peculiarly risky nature

of the work the employer hired the independent contractor to do. Since there is no longer any distinction in this jurisdiction between the at-fault employer and the "faultless" employer under the exceptions to non-liability set out in chapter 15, I concluded in *Gass* that it "would make no sense whatsoever" to shield from liability the at-fault employer who hires out work posing peculiar risks to its contractor's employees (section 413), and yet not to shield the negligent employer who deals in work posing only ordinary risks of harm." *See id.* at 218. It remains my position that such a result would be not only illogical, but also unfair.

It cannot be over-emphasized that chapter 15 first sets forth the general rule that an employer will not be liable for the negligence of its independent contractor. *See* Restatement § 409. This general rule flows logically from the fact that the independent contractor is not the employer's servant, and thus is outside the control and supervision of the employer. *See id.* cmt. a (defining "independent contractor" as "any person who does work for another under conditions which are not sufficient to make him a servant of the other"); *id.* § 220 (defining "servant" for purposes of *respondeat superior*). Not unlike the policies animating the principle of *respondeat superior*, the exceptions set forth in chapter 15 were developed to include as potentially liable the employer of an independent contractor who is to some degree involved in the circumstances creating the unreasonable risk of harm caused by the negligence of its independent contractors. *See id.* § 409 cmt. b. In this way, the provisions of chapter 15 provide a basis for holding the employer liable when work it hires a contractor to do causes injury to a person who does not have any connection with the relationship or to have had the

opportunity to bargain for encountering the risks involved.

The definitive independence of the contractor is illustrated by section 414 itself. That section, entitled "Negligence in Exercising Control Retained by Employer," provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Id.* § 414. Under section 414, the control retained by the employer that potentially subjects it to liability is not sufficient to render the independent contractor a servant for whose acts the employer will be vicariously liable under the doctrine of *respondeat superior. See id.* § 414 cmt. a ("The employer may ... retain a control less than that which is necessary to subject him to liability as master."). Instead, the employer is liable for some fault of its own in failing to reasonably exercise the limited control it has retained over doing a part of the work which causes the injury.

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.... There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Id.* § 414 cmt. c. Nevertheless, the fault attributed to the employer under these circumstances is still secondary to the negligence of the independent contractor, which is the immediate cause of the harm and is a precondition for the application of any of the provisions of chapter 15.

As I stated in *Gass* and restate here, the analysis in *Monk* applies equally to bar suits by employees under section 414. First, "[i]t is as consistent with the purposes of the Virgin Islands workers' compensation act to interpret ... the word "others" in section 414 as excluding the independent contractor's employees as it was for *Monk* to so interpret the peculiar risk provisions." *Gass,* 149 F.Supp.2d at 219. The goal of workers' compensation, namely, to relieve employers and employees of the burden of civil litigation without impairing the purpose of providing prompt payment to injured employees without regard to fault, is no more compromised by barring employee suits under section 414 than by barring such suits under section 413. *See Chinnery v. Government of the Virgin Islands,* 865 F.2d 68, 71 (3d Cir. 1989), *quoted in Monk,* 53 F.3d at 1393–94. Second, "to allow the employee to recover against the independent contractor's employer ... under section[ ] 414 would produce the same 'inequitable' and anomalous result as under the peculiar risk provisions." *Gass,* 149 F.Supp.2d at 219 (citing *Privette,* 21 Cal.Rptr.2d 72, 854 P.2d at 727–28). This is so because to allow an employee such as Figueroa to sue for injuries caused by United Ogden's negligence in performing work HOVIC contracted out to United Ogden would give Figueroa greater rights and remedies as an employee of HOVIC's contractor than she would have if she had worked directly for HOVIC. Figueroa clearly could not sue HOVIC if HOVIC had hired her to take care of the salad bar at its Port–A–Kamp cafeteria and another HOVIC employee had negligently allowed the water to pool on the

floor. It would be both inequitable and a circumvention of the Virgin Islands workers' compensation scheme to allow Figueroa to sue HOVIC simply because HOVIC chose to contract out work involving risks of only an ordinary nature. The lack of any evidence that any control HOVIC retained may have contributed to United Ogden's negligent acts or omissions that in turn caused Figueroa's injuries only serves to highlight the inequity and circumvention.

The majority's implication that I would hold that "one who hires an independent contractor cannot be held liable for his *own* negligence outside of the 'peculiar risk' arena" is at best a red herring. (Maj. op. at 639 (emphasis in original).) As I have discussed above, my opinion in *Gass* is in full accord with the tort law of the Virgin Islands. Thus, following *Gass* is not "to undertake ... a sweeping change in the tort law of this jurisdiction." (*Id.*) While the local workers' compensation law allows an injured employee to sue any person reasonably responsible for his injuries, it does not create a substantive basis for the lawsuit, contrary to the majority's implication. (*See id.* at 641.) The worker still must have a cause of action by which to hold the contractor's employer legally responsible, and section 414 simply does not provide one.

I emphasize that construing section 414 as not giving the contractor's employee a cause of action in no way affects the availability of tort actions to the employee for harm caused by her contractor's employer and occurring outside the employer-con-

tractor relationship. The employee has presumably bargained for economic reward in exchange for encountering the risks associated with the work. *See Monk,* 53 F.3d at 1393 (" '[T]he economic system permits workers who presume to undertake dangerous work to bargain for an enhanced reward for assuming the danger.' ") (citation omitted). She cannot fairly be presumed to have bargained for encountering risks completely unrelated with the work being performed under the contract and which have nothing to do with the provisions of chapter 15.

For example, if, while within the scope of her employment with United Ogden, Figueroa had been struck and injured by a vehicle driven by a negligent HOVIC employee, nothing in section 414 or the other provisions of chapter 15 would prevent her from suing HOVIC and its driver for the harm caused by the driver. Or to bring it closer to home, say a HOVIC employee, while picking up a take-out salad at the Port–A–Kamp cafeteria for his boss, negligently sticks out a leg and trips Figueroa as she passes by. That Figueroa is not an "other" who can sue HOVIC under section 414 for harm caused by the negligence of United Ogden has nothing to do with her cause of action against HOVIC under the doctrine of *respondeat superior* for the negligence of the HOVIC employee who tripped her. To preclude employee suits under section 414 would be to hold that the employer will not be subject to liability when the contractor's own negligent act or omission in the course of performing the contract causes harm to one of the contractor's own workers.[7]

---

**7.** Contrary to the majority's assertion, such a holding would be wholly compatible with the Virgin Islands workers' compensation scheme, which provides for employee suits against "responsible" third parties. *See* 24 V.I.C. § 263. Section 263 provides that an employee entitled to workers' compensation

benefits and whose injury "has been cause[d] *under circumstances making third persons responsible for such injury* ... may claim and recover damages from the third person responsible for said injury," subject to the subrogation rights of the Administrator. For the reasons already stated, a contractor's employ-

## D. Further Observations and Other Jurisdictions

Although the analysis in *Monk* as extended by *Gass* is convincing enough, I add the following observations. First, *Monk*'s analysis is founded on the unadopted special note, which makes no distinction between the peculiar risk provisions and the other provisions of chapter 15; "when the Sections in this Chapter speak of liability to 'another' or 'others' or to 'third persons', it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included." Special Note at 17–18. The majority offers no coherent analysis to explain why *Monk*'s adoption of the reasons in the special note should somehow foreclose the extension of its analysis beyond the peculiar risk provisions. The majority does not explain what inheres in the nature of the peculiar risk provisions that renders the reasoning in *Monk* logical with respect to section 413 and illogical when applied to section 414. Nor does it explain how the presence or absence of peculiar risk determines the identity of the "other" to whom the employer owes a duty of care as referred to throughout chapter 15.

Second, I am not the first judge to articulate the logic of barring employee suits under direct liability provisions other than section 413. Several state courts have also concluded that an employee of an independent contractor is barred from suing the hirer of the contractor for negligent exer-

cise of retained control under section 414. *See Sutherland v. Barton*, 570 N.W.2d 1, 5 (Minn.1997) ("[W]hen applying the Restatement [Second of Torts] sections that impose liability on companies hiring independent contractors, we have held that 'others' does not include the employees of an independent contractor. This limitation also applies to § 414.") (citation and footnote omitted); *Parker v. Neighborhood Theatres*, 76 Md.App. 590, 547 A.2d 1080, 1085 (1988) ("Appellant has not provided the Court with any authority that an employee of an independent contractor injured by the negligence of his own master is a person intended to be included among the class of persons to whom the owner owes a non-delegable duty of reasonable care .... No matter how appellant phrases it, what he is unsuccessfully attempting is an end run on the Worker's Compensation Law."); *King v. Shelby Rural Elec. Coop. Corp.*, 502 S.W.2d 659, 662 (Ky.1973) ("Nothing in the discussions of Sections 413, 414, 416, and 427 of the Restatement, Torts 2d, indicates that an employee of an independent contractor is within the class of 'others' protected by those sections."). These decisions are no more nor less binding on Virgin Islands courts than the California cases which are cited repeatedly by the majority, yet the majority makes no mention of them or their reasoning.

Third, the California Supreme Court has similarly barred employee suits under section 411,[8] a direct liability provision which has nothing to do with the peculiar risk

ee who has presumably bargained for encountering the risks associated with the work and who is harmed by the negligence of her own employer during the performance of the contract, as a matter of law, simply has not been injured "under circumstances making [the contractor's hirer] responsible for such injury." *See id.*

**8.** Section 411, entitled "Negligence in Selection of Contractor," provides:

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owed to third persons.

RESTATEMENT § 411.

doctrine. *See Camargo v. Tjaarda Dairy,* 25 Cal.4th 1235, 108 Cal.Rptr.2d 617, 25 P.3d 1096, 1102 (2001) (ruling that a contractor's employee cannot sue the contractor's hirer under the "negligent hiring" theory set forth in section 411). Yet, just a couple of months ago, the same court held that a contractor's employee can sue the contractor's employer under section 414, another direct liability provision which also has nothing to do with peculiar risk. *See Hooker v. Department of Transp.,* 27 Cal.4th 198, 115 Cal.Rptr.2d 853, 38 P.3d 1081 (2002). To reach this conclusion, the California high court had to rewrite section 414 to add a special requirement to make an employer liable to its contractor's employee:

> We conclude that a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries.

*Hooker,* 115 Cal.Rptr.2d at 856, 38 P.3d at 1083 (emphasis added).

Thus, in California, there are now two bases for assessing the liability of an employer for the negligence of its independent contractor under section 414:(1) one for "others" actually written into section 414 resulting from the failure of the employer to exercise its retained control with reasonable care, and (2) one for the contractor's employees judicially written into section 414 resulting from the employer's exercise of its retained control which "affirmatively contributed to the employee's injuries." Under California law, there are two separate standards for liability under

section 414, depending on whether the plaintiff is the contractor's employee "other" or some other "other." Nothing in section 414, or any provision of chapter 15, supports this judicial revision, and I reject *Hooker's* added requirement as utterly inconsistent with the straightforward language of chapter 15, which does not contemplate separate categories of "others" with varying standards for each individual provision.

It is difficult to conceive of a logical analysis that would shield the employer from liability under section 411, but not under section 414. Both are direct liability provisions that impose liability on an employer who has failed to conduct itself with reasonable care, resulting in injury to "third persons" or "others." *Compare* Restatement § 411 (employer liable where injury is "caused by [its] failure to exercise reasonable care to employ a competent and careful contractor") *with id.* § 414 (employer liable where injury to "is caused by [its] failure to exercise [its] control with reasonable care"). Neither is a peculiar risk provision. And in both situations, as in all the direct liability provisions of chapter 15, it is the negligent act or omission of the hired contractor that causes the injury in fact. *See* Restatement § 409 (stating general rule of non-liability for "physical harm caused to another by an act or omission of the contractor or his servants"). In all of the direct liability exceptions of topic 1, liability is not imputed in the ordinary legal sense of the term, but rather is *derived from* the causative negligent act or omission of the contractor.

What I believe led the California Supreme Court to rewrite section 414 (which revision has been adopted at least in part by the majority)[9] is a fundamental mis-

---

9. The majority somewhat selectively quotes the California Supreme Court's decision in

*Hooker* for the proposition that "liability of the hirer [whose conduct affirmatively con-

characterization of the scope and purpose of chapter 15 of the Second Restatement of Torts. As I have repeatedly emphasized, none of the exceptions to section 409's general rule of the employer's non-liability can apply without the underlying negligence of the independent contractor and its employees. Chapter 15 of the Restatement categorizes those exceptions that also involve the fault or negligence of the employer of the independent contractor under the direct liability provisions of sections 410–415. Chapter 15 provides no mechanism for allocating fault between the employer and its independent contractor because it is only restating those instances in which the contractor's employer is also liable with the contractor "to others," the contractor already being liable to those others by definition. The contractor is always the one primarily responsible for the workers' on-the-job injuries. For some reason, the California Supreme Court seems to have felt the need to justify its exclusion of the employer from vicarious liability section 416 in *Privette,* from direct liability section 413 in *Toland,* and from direct liability section 411 in *Camargo.* The California high court accomplished this by fashioning its own mechanism for allocating relative fault between the contractor and its employer. Flying in the face of the language of chapter 15, the court declared that the employer's direct liability under section 413 is nevertheless "in essence 'vicarious' or 'derivative' in the sense that *it derives from the 'act or omission' of the hired contractor.*" *Toland,* 955 P.2d at 512 (emphasis added); *see Privette,* 854 P.2d at 725 n.2. The *Privette/Toland* court could then conclude for section 413 that the employer was less at fault than the contractor and that "it would be unfair to impose liability on the hiring person when the liability of the contractor, *the one primarily responsible for the workers' on-the-job injuries,* is limited to providing workers' compensation coverage." *Toland,* 955 P.2d at 513 (citing, *inter alia, Monk,* 53 F.3d at 1390–93) (emphasis added); *see also Camargo,* 25 P.3d at 1102–03. The *Camargo* court extended this reasoning to section 411: "For the same reasons, an employee of a contractor should be barred from seeking recovery from the hirer under the theory of negligent hiring," even while acknowledging that section 411 makes the employer liable for "his *own* negligence under a theory of *direct* liability" and adopting the *Privette/Toland* mischaracterization of the employer's direct liability as essentially vicarious for section 411. *Id.* (emphasis in original). In this way, the court could find that liability under section 411 is much like liability under section 413 because the contractor is the person "primarily responsible for the worker's on-the-job injuries." *Camargo,* 108 Cal.Rptr.2d 617, 25 P.3d at 1102.

Given its erroneous and unnecessary creation that the employer's direct liability under sections 411 and 413 is nevertheless "in essence 'vicarious' or 'derivative,'" the California Supreme Court was virtually compelled to find the employer liable to the contractor's employee under section 414 when it could no longer categorize that liability as vicarious or derivative. In situations in which the employer's actions affirmatively contribute to the employee's injuries, the court's judicially constructed fault allocation mechanism fails, leaving no

tributed to the injury] is *not* in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor." (*See* maj. op. at 638 n. 10 (quoting *Hooker,* 115 Cal.Rptr.2d at 864, 38 P.3d at 1090).) The majority, however, does not adopt the separate and specially heightened "affirmative conduct" standard for employees articulated in *Hooker.*

way for the court comfortably to conclude that the contractor is primarily responsible for the worker's on-the-job injuries. The majority seems to have adopted this same approach. I believe that, under Virgin Islands law, the direct liability exception in section 414 must remain as written[10] as a means of making the employer of an independent contractor liable only to those "others" not involved in the work and only for its failure to reasonably exercise any retained control over the work which causes injury to those others.[11]

Finally, I cannot agree with the majority that the Virgin Islands workers' compensation scheme forecloses my analysis here. If anything, our workers' compensation act supports my conclusion that chapter 15 provides no cause of action to a contractor's employee.

### E. 24 V.I.C. §§ 263a and 284(b)

Section 263a provides that "it shall not be a defense to any action brought by or on behalf of an employee, that the employee at the time of his injury or death, was the borrowed, loaned, or rented employee of another employer." 24 V.I.C. § 263a. Section 284, which sets forth the exclusive

remedy provision of our workers' compensation act, further provides:

> For the purposes of this section, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to comply with the provisions of this chapter with respect to being an insured employer. The "statutory employer and borrowed servant" doctrine are not recognized in this jurisdiction, and an injured employee may sue any person responsible for his injuries other than the employer named in a certificate of insurance issued under section 272 of this title.

24 V.I.C. § 284(b). As best I can understand it, the majority's position is that the Legislature has necessarily "denie[d] the hirer of an independent contractor immunity from suit where the subcontractor is insured for work[ers'] compensation" because section 284(b) refers to a "subcontractor's employees," and the reference to the "borrowed employee" is not to be strictly read. (*See* maj. op. at 642.) Although section 284(b) does indeed refer to a contractor and subcontractor, it is simply to describe the only circumstance under which the contractor can be deemed the employer of the subcontractor's employ-

---

**10.** As pointed out by the majority, the Restatement (Second) of Torts, "as generally understood and applied," provides "the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4. The California Supreme Court is not so bound, and is free to reject, accept, or judicially modify a rule set forth in the Restatement. The *Hooker* court's new standard for employee "others" under section 414 is a judicially created expression of a continuing evolution of California law, and is simply not derived from the plain language of that section, which controls us here by statute. *See Saldana v. Kmart,* 260 F.3d 228, 233 (3d Cir.2001) (rejecting Pennsylvania common law to apply the plain language of the Restatement as Virgin Islands law); *Monk,* 53 F.3d at 1392 n. 30

("[A]n interpretation of the Restatement by one jurisdiction within this circuit does not compel the same interpretation for another jurisdiction.").

**11.** There may even be circumstances in which the employer may subject itself to liability under ordinary tort causes of action by sufficiently and affirmatively taking over control of the part of the work that causes injury to the employee. Even though it would relate to the work being performed, the situation then would no longer be governed by section 414 and chapter 15 because the employer itself either performed the work or directed the performance of the work. These facts and this theory, of course, were not before the trial court and are not before us.

ees. Since HOVIC clearly is not and cannot be deemed the employer of United Ogden's employees, section 284(b) is irrelevant to the legal issues in this case. The very plain language of sections 263a and 284(b) has nothing to do with this case.

Section 263a was added to our workers' compensation act in 1984 to abrogate the borrowed employee doctrine in this jurisdiction. The effect of that doctrine was to deem the "borrowed employee" to be the employee of the "borrowing employer", thereby *entirely limiting* the borrowed employee to relief under the workers' compensation act and barring any tort lawsuit against the said "borrowing employer." *See Vanterpool v. Hess Oil V.I. Corp.*, 766 F.2d 117, 128 (3d Cir.1985) (superseded by statute). Contrary to the majority's assertion, barring the contractor's employee from suit under section 414 is not at all incompatible with the Legislature's having rejected the borrowed employee doctrine. First and foremost, the employee of the independent contractor, such as Figueroa, is not the "borrowed, loaned, or rented employee of another employer," nor is she treated as one under any of the provisions of chapter 15 or in any case applying them. She is the employee of an independent contractor, United Ogden, who by very definition is not sufficiently controlled by the hirer, HOVIC, to be considered HOVIC's employee. Thus, any statute specific to the defenses available to a borrowing employer, such as section 263a, or the remedies available to a borrowed employee, such as section 284, is wholly irrelevant.

Further, barring employee suits under 414 would not run afoul of section 284(b) of the workers' compensation act because it does not "deem[ ] the [contractor's hirer] the employer of the [contractor's] employ-

ees," which would indeed be improper under that section. *See* 24 V.I.C. § 284(b). To write into these workers' compensation provisions a grander prohibition by the Legislature that would prevent the Court from denying tort recovery under chapter 15 of the Restatement to the employee for "physical harm caused to another *by an act or omission of the contractor or his servants*," [12] as the majority does here, is to entirely rewrite both section 414 and the relevant sections of our workers' compensation law.

Extending *Monk* to bar employee suits under section 414 simply confirms that a contractor's employee is not an "other" under section 414. It in no way amounts to limiting the contractor's employee entirely to the exclusive remedy of workers' compensation for injuries caused by the contractor's employer, as she would have been under the borrowed servant doctrine. As explained above, Figueroa can sue HOVIC for harm caused by it or its own employees' negligence in circumstances *unrelated to the work being performed*, or, as reaffirmed by *Monk*, under section 343 and 343A of the Restatement.

Most significantly, the majority fails to reconcile its interpretation of sections 263a and 284(b) with the Court of Appeals' holding in *Monk* and, indeed, every other Virgin Islands case that has denied liability to contractors' employees under chapter 15. If section 284(b) means what the majority would have it say—that an employee may sue any third person who may be "responsible" in fact for the injuries—then it should explain why the employer is not "responsible" under sections 411 (per California), and sections 413, 416 & 427 (per *Monk*, 53 F.3d at 1394), but is "responsible" under section 414.[13]

---

**12.** Restatement § 409 (general rule of nonliability) (emphasis added).

**13.** As I read the majority's opinion, employer liability depends on the *degree* of the deriva-

The majority's effort to reconcile the employer's non-liability under the peculiar risk provisions with the employer's liability under the other provisions of chapter 15 leaves me baffled. The peculiar risk doctrine incorporated in chapter 15 ordinarily provides the basis for *subjecting* an otherwise "faultless" person to liability, not for *protecting* that person from liability. In the context of contractor's employees, however, the Court of Appeals has *denied* tort recovery under circumstances presenting peculiar risks, observing that liability to the contractor's employees "is not necessary to achieve the original aims of the doctrine of peculiar risk." *Monk*, 53 F.3d at 1392. As explained in *Monk*, recovery by the contractor's employee under the peculiar risk doctrine is not necessary because the contractor's employee already has recourse to a system of recovery without regard to fault, which is exactly what sections 416 and 427 achieve for the non-employee plaintiff. Although the majority attempts to limit the applicability of *Monk* to peculiar risk provisions by referring to the "historical considerations" underlying the original aims of the doctrine, it does not explain why the result should be any different here where there is likewise no historical need for recovery regardless of fault because the workers' compensation scheme provides such recovery. Just as with section 413 under *Monk*, liability is "not necessary" here because the employee has recourse to a system of recovery regardless of fault.

### F. Conclusion

In sum, there is no logical distinction between a theory of derivative liability

based on the negligent employer who fails to provide for special precautions and one based on the negligent employer who fails to exercise its retained control reasonably to require the contractor to utilize safe work methods. When the contractor is charged with the primary responsibility for the maintenance and operation of a cafeteria, as in this case, its employer is not liable under section 414 for injuries to the contractor's employee caused by the contractor's negligence in discharging those duties. Accordingly, I would hold that the contractor's employee is not an "other" protected by section 414 of chapter 15 of the Restatement and affirm the trial court's dismissal of Figueroa's retained control claim.

### II. HOVIC's Liability Under Sections 343 & 343A.

Figueroa also appeals the trial court's dismissal of her claim under sections 343 and 343A of the Restatement. Although Figueroa, as an invitee-employee of HOVIC's contractor, was protected by these premises liability causes of action, I agree with the trial judge's finding at the end of the plaintiff's case that Figueroa did not present sufficient evidence to send these claims to the jury.

Section 343 provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if, but only if, he (a) knows or by exercise of reasonable care would discover the condition, and should realize that it involves an

tive or vicarious nature of the nominally direct liability provisions. If this is so, it should explain why the peculiar risk provision embodied in section 413 is more "derivative" or "vicarious" in its essence than the other direct liability provisions. It is an incorrect statement of the law to say, as the majority

does, that section 414 "does not depend on the conduct of the independent contractor." (*See* maj. op. at 12.) *All* the provisions of chapter 15 are premised at bottom on the negligent acts or omissions of the contractor, whether labeled direct or vicarious. *See* Restatement § 409.

unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it and (c) fails to exercise reasonable care to protect them against the danger.

Restatement § 343 ("Dangerous Conditions Known to or Discoverable by Possessor"). Section 343A provides in relevant part:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement § 343A ("Known or Obvious Dangers"). Sections 343 and 343A are to be read together: Section 343 protects invitees from nonobvious dangerous conditions on the land, while section 343A deals with dangers that are known or obvious to the invitee. *See Monk*, 53 F.3d at 1389.

The question before the trial court was whether, viewing the evidence presented at trial in the light most favorable to Figueroa and giving her the advantage of every fair and reasonable inference, there was sufficient evidence from which a jury reasonably could find for Figueroa. *See* FED. R. CIV. P. 50(a); *Williams v. Rene*, 886 F.Supp. 1214, 1221 (D.Vi.), *rev'd on other grounds*, 33 V.I. 297, 72 F.3d 1096 (3d Cir.1995). Thus, in this case, there would have to be enough evidence for the jury reasonably to find either (1) that the dangerous condition of the salad bar hose was not obvious and that HOVIC knew of or could have discovered the nonobvious condition but failed to exercise reasonable care to protect Figueroa, or (2) HOVIC should have anticipated that Figueroa would let herself be harmed by the danger of the water leaking from the salad bar hose onto the floor, even though she ad-

mitted she knew about it, and that HOVIC failed to exercise reasonable care to protect Figueroa from it.

After hearing all the plaintiff's evidence, the trial judge found that there was "no evidence provided by any of the plaintiff's witnesses indicating knowledge or discovery of the condition by the defendant." *Figueroa v. HOVIC*, Civ. No. 137/1997, slip op. at 9 (Terr.Ct. Nov. 27, 1998). Having carefully reviewed the record below, I agree with the trial judge that Figueroa presented no evidence at trial sufficient to establish the knowledge or constructive knowledge of HOVIC, an essential element for plaintiff to prove under section 343. Ogden Services was clearly responsible for the daily maintenance of the cafeteria, including keeping the floor clean. Figueroa testified that she herself and her coworkers were directly responsible for making sure the floors were clean. She testified further that she herself had cleaned water spilled from the *same* salad bar hose on more than one occasion. As the trial judge concluded, "[i]t was ... clear that the condition that resulted in the injury was known to [Ogden Services]" and that "no evidence was place on the record attributing knowledge of the condition to HOVIC" before Figueroa fell and was injured. *See id.* On appeal, Figueroa asserts that the jury could have inferred knowledge based on the evidence that Ogden Services knew of the condition and met periodically with HOVIC regarding safety concerns. This is a wholly insufficient factual basis upon which a reasonable jury could infer that HOVIC had actual knowledge of the dangerous condition. It would have been rank speculation to allow the jury to make such an "inference," and the trial judge correctly dismissed the section 343 claim.

I would likewise affirm the trial court's ruling on section 343A, which deals with

dangers known to invitees. As already noted, Figueroa clearly knew about the danger of slipping in the pooled water—she repeatedly cleaned it up. As also already noted, plaintiff did not prove that HOVIC knew anything about the obviously dangerous condition. It follows that if HOVIC knew nothing of the dangerous condition, no jury could reasonably find that HOVIC reasonably should have expected that Figueroa would not exercise care to protect herself or have anticipated that her attention might be distracted from the danger or have foreseen that Figueroa would "proceed to encounter" the condition despite its obviousness to her. *See* Restatement § 343A cmt. f. For these reasons, I would affirm the trial court's dismissal of Figueroa's section 343 claim as well.